State, ex rel. Louis V. Sheffer, appellant, v. Abel B. Fuller et al., appellees.

Filed March 20, 1909. No. 16,023.

1. **Drainage Districts: Act Authorizing: Validity.** That part of chapter 153, laws 1907 (Ann. St. 1907, sec. 5598 *et seq.*), which authorizes the commissioners of one county upon a proper petition to establish the boundaries of a drainage district so as to include land in an adjoining county, is not void.

2. ———: **Boundaries.** The boundaries of drainage districts created under said act may lawfully overlap.

3. ———: ———: **Changes.** The commissioners at any time before the rights of third persons have accrued may alter the boundaries

of such proposed district, but, if a change is made, they must give the landowners within said district three weeks' notice of the election, and therein correctly describe the boundaries of the proposed district.

4. ——: ——: ——. In case the commissioners, after establishing the boundaries of a proposed district under said act, publish notice of the election provided by statute, and thereafter, before election, modify such boundaries, but do not change the notice, a landowner within the altered district who did not participate in said election may, if he acts promptly, maintain an action in *quo warranto* to dissolve said district and oust its directors from office.

APPEAL from the district court for Saunders county: GEORGE F. CORCORAN, JUDGE. *Reversed.*

*H. A. Reese,* for appellant.

*T. F. A. Williams, contra.*

*B. E. Hendricks, amicus curiæ.*

ROOT, J.

Action in *quo warranto* to dissolve the Salt Creek Valley Drainage District and oust respondents from acting as directors thereof. A general demurrer to the petition was sustained, and, relator electing to stand upon his pleading, the action was dismissed. Relator appeals. The drainage district, if organized, was created under the act of March 27, 1907 (Ann. St. 1907, sec. 5598 *et seq.*). The terms of the statute are referred to and thoroughly discussed in *State v. Hanson,* 80 Neb. 724, and reference is made thereto for an understanding of the act.

1. It is argued that the statute is void in so far as it assumes to authorize the creation of a drainage district within two or more counties; that the proceedings in the case at bar were instituted and carried on in Saunders county, where the greater part of said district is situate, and that, as relator's land is in Cass county, they are void as to his real estate. We have not been cited any

53

authority to sustain the proposition advanced and are not inclined to adopt it.   It is competent for the state to authorize the creation of governmental agencies for the enforcement of its police power, and for the legislature to clothe county commissioners, supervisors, or any other administratrive officer or board with authority to establish a district for the reclamation of swamp, overflowed or wet lands, or lands so subject to inundation as to destroy their utility or to constitute a menace to the public health.   The fact that such bodies of land may extend into two or more counties does not render the legislature powerless to include contiguous tracts into one district for the more convenient exercise of the police power. *Hagar v. Reclamation District,* 111 U. S. 701; *Reclamation District v. Hagar,* 66 Cal. 54; *Shaw v. State,* 97 Ind. 23; *Hudson v. Bunch,* 116 Ind. 63; *Updegraff v. Palmer,* 107 Ind. 181; *People v. Draper,* 15 N. Y. 532.   That the county board wherein the greater area of the proposed district is situated should act is a reasonable provision. Nor does the act amend the statutes relating to the powers and duties of county commissioners.   *Nebraska Telephone Co. v. Cornell,* 59 Neb. 737.

2. Relator alleges that his land is within the limits of another proposed drainage district, and that the law does not authorize or contemplate the overlapping of those districts so that real estate may be subject to separate assessments in as many distinct districts.   The statute does not refer in specific terms to the overlapping of districts, nor does it forbid their formation.   While some complications may arise in the prosecution of public improvements on land within two or more districts and in assessments to pay therefor, yet we are of opinion that the objection made is not a serious one.   Relator's land can only be assessed for, and to the extent of, benefits actually bestowed by virtue of the improvements made by any particular district.   The assessments can only be laid after notice, and, if the levy is not supported by the facts, the landowner has an ample remedy by appeal to the courts

wherein upon inquiry the truth may be ascertained and a
judgment rendered that will amply protect him in his
property rights.  If his land may be improved by the con-
struction of ditches or dykes in two or more districts, he
ought to pay to the limit of those benefits.  To hold other-
wise would permit the owner of a large tract of land in-
cluded in a district which had not benefited that land to
any appreciable extent to receive the advantage of an
improvement made by another district, and yet escape
payment therefor.  In *Shannon v. City of Omaha*, 73
Neb. 507, we sustained a municipality in the creation of a
second and smaller sewer district within the boundaries
of a larger one, and upheld special assessments laid in the
smaller district, and we think that the principle therein
announced is pertinent in the instant case.

3. The application for the formation of said district
was filed September 25, and five days later an order was
made by the commissioners of Saunders county fixing the
boundaries of said district.  An election was called for
October 26, and notices were duly published in a news-
paper in Cass and one in Saunders county.  This notice,
as the statute required, described the boundaries of the
proposed district as fixed by the county commissioners.
On the 23d of October certain persons, owning about
1,000 acres of land within the proposed district, appeared
and made a showing that their lands were already within
a drainage district created for the purpose of reclaiming
lands adjacent to Wahoo and Clear creeks, and that
neither equity, justice nor the public welfare warranted
including said lands within the boundaries of respondent
district, and thereupon, without notice, said commission-
ers entered an order modifying their first one and exclud-
ing the aforesaid land from respondent district.  Notice
was not given of the making of the second order except to
the seventeen parties who had petitioned for the creation
of respondent district.  October 26, the day fixed in the
published notice, an election was held, and a majority of
the votes cast favored the creation of a drainage district,

and directors were elected who have since qualified. Relator did not attend or vote at said election, nor did the owners of a majority of the acres included in said territory thus vote. Section 5601, Ann. St. 1907, provides that "any one asking shall be given a hearing as to the boundary," but provision is not made for notice or that the commissioners may not proceed forthwith. The board might well have postponed immediate action. Their orders under said statute are not subject to review by appeal or error proceedings, but their discretion while acting under said statute is practically unlimited. In *State v. Ross*, 82 Neb. 414, in construing the power of a county board in drainage proceedings initiated under sections 5500 *et seq.*, Ann. St. 1907, it was held that a preliminary order made might lawfully be revoked where the rights of third parties had not accrued. No provision is made in either statute for a reconsideration of an order made by the commissioners. In *Clark v. Nebraska Nat. Bank*, 49 Neb. 800, it was held that, if an *ex parte* order is made by a court or judge, the party affected thereby may in a proper case have it set aside, and must request the court to so act before appealing to this court. While the commissioners do not exercise judicial power or act according to the course of the common law under said statute and their orders cannot be reviewed in direct proceedings, yet, upon principle, we incline to the belief that the commissioners had authority, before the electors had voted, to establish the drainage district, to modify their order first made, and change the boundaries of the tentative district, and that it was the duty of landowners therein to bring to the commissioners' attention any facts that would tend to prove that a mistake had been made in fixing the limits of the proposed district.

The vital proposition in this case is whether, under the circumstances, notice not having been given of the change in the boundaries of the proposed district, the election was void. In *State v. Hanson*, 80 Neb. 724, we held that an election under said act was not an election within the

meaning of the constitution or the general statutes, but the district could only become legally organized and endowed with power to perform its functions by an affirmative vote of a majority of the votes cast at said election. The statute does not direct that actual notice shall be given the landowners of the limits of the proposed district, but that notice shall be published once each week for three weeks in a newspaper published at the county seat of every county wherein any of the land of the proposed district is situated. The notice must contain the title to the act and a description of the boundaries of the proposed district as fixed by the county commissioners.

We are of opinion that landowners have a right to rely upon the district being formed, if created at all, in conformity with said notice, and, if the commissioners change those boundaries so that the notice does not truly describe them, any landowner who did not have knowledge of the change or participate in that election may, by timely appeal to the courts, successfully challenge the legal existence of said district. *City of Atlanta v. Gabbett,* 93 Ga. 266; *Payson v. People,* 175 Ill. 267.

The judgment of the district court therefore is reversed and the cause remanded for further proceedings.

REVERSED.