McLaughlin and Clarke, JJ., concurred; Ingraham, P. J., and Scott, J., dissented and voted to affirm on the opinion of the surrogate (Matter of Vosseler, 89 Misc. Rep. 674).

Decree reversed, so far as appealed from, with separate bills of costs to appellants appearing separately, and decree modified as stated in opinion. Order to be settled on notice.

---

In the Matter of the Determination of the Construction and Effect of a Disposition of Property Contained in the Last Will and Testament of BRIDGET HADDOCK, Deceased.

MICHAEL HADDOCK, Individually and as Executor, etc., of BRIDGET HADDOCK, Deceased, and Others, Appellants; JOHN HADDOCK, Respondent.

(*Supreme Court, App. Div., Third Department, November* 10, 1915.)

REAL PROPERTY—WILL—TENANTS IN COMMON.

A testatrix, by will drawn by a layman, gave and bequeathed unto her sons John and Thomas a homestead, with the buildings thereon "jointly to be divided by said sons as they may deem fit and proper, or to be held jointly if they choose." This was the only devise or bequest to John. The testatrix also gave two legacies "to be paid by my son John Haddock from the proceeds of his bequest."

*Held,* that the testatrix intended to use the term "jointly" in the sense of "together," and that John and Thomas were seized of the homestead as tenants in common.

APPEAL by Michael Haddock, individually and as executor, and by certain of the heirs at law of Thomas Haddock, de-

ceased, from a decree of the Surrogate's Court of the county of Sullivan, entered in the office of said Surrogate's Court on the 12th day of April, 1915, adjudging that John and Thomas Haddock, the beneficiaries under the 2d clause of the will of Bridget Haddock, deceased, became seized of the real property therein described as joint tenants, and not as tenants in common.

Robert B. McGinn (Joseph Rosch of counsel), for the appellants.

Fullerton & Parshall (William A. Parshall of counsel), for the respondent.

LYON, J.—The single question presented upon this appeal is whether John and Thomas Haddock, sons of the testatrix, took title as joint tenants or as tenants in common, under the will of Bridget Haddock, deceased. The will consists of three clauses. The first simply directs the payment of the just debts and funeral expenses of testatrix. The last simply appoints her son Michael executor. There is no disposition of residuary estate, and the only bequests of personal property are of one hundred dollars each to sons and daughters, which in each instance is made a charge upon real estate. The provisions of the 2d clause of the will, so far as material to be considered upon this appeal, are as follows: " Second— * * * I give and bequeath unto my sons John Haddock and Thomas Haddock the homestead consisting of fifty acres of land containing the boarding house and other buildings. This bequest is given to my sons John and Thomas jointly to be divided by said sons as they may deem fit and proper, or to be held jointly if they choose." Later the testatrix gives and bequeaths to her stepson, Patrick Haddock, and to her stepdaughter, Maria McKerness, the sum of one hundred dollars each. Following such

bequests is the following provision: " The bequests of money given to Patrick Haddock and Maria McKerness are to be paid by my son John Haddock from the proceeds of his bequest * * *." The only devise or bequest to John Haddock is that above noted. The testatrix died in August, 1914. Thomas Haddock died intestate in February, 1915, leaving three brothers and four sisters, his sole heirs at law, and without having aliened his interest in the land. John thereupon claimed to be the sole owner by reason of survivorship. This proceeding was thereafter instituted to obtain a construction of the will in respect of the character of the tenancy of John and Thomas. The surrogate adjudged that their seizure was as joint tenants and not as tenants in common. From the decree entered thereon this appeal has been taken.

The case of Overheiser v. Lackey (207 N. Y. 229) seems to be decisive of this question. However, the respondent seeks to draw a distinction between that case and the case at bar in that in the case at bar words additional to " jointly " indicate that a joint tenancy and not a tenancy in common was intended, and that the will in question contains no provision which could by any possibility be construed as inconsistent with an intention to create a joint tenancy. In the Overheiser case the language of the devise was: " I give and devise to my daughters * * * jointly, the lot of ground with the dwelling house * * *." This was followed by a clause giving and devising to said devisees an interest in the residuary estate. By a later clause of the will the testator directed his executors to act as trustees for one of the devisees and to receive in trust her portion of the estate and to act for her in selling and conveying her interest therein. In the case at bar, as has been noticed, the share of John Haddock is charged with the payment of the two legacies to his brother and sister, Patrick and Maria, " to be paid by my son John Haddock from the proceeds of his bequest."

In the same clause of the will the testatrix charges the farm of fifty acres which "I give and bequeath to my son Michael Haddock," with the payment of three legacies to her three daughters of $100 each in the following language: "The bequests of money given to my daughters * * * are to be paid by my son Michael Haddock from the proceeds of his bequest." The only devise or bequest made to Michael Haddock is that of this farm. The farm devised to John and Thomas is described as consisting of fifty acres of land, with a boarding house and other buildings. The direction that the two legacies are to be paid by John from the proceeds of his bequest might, under some circumstances, be held to imply that the testatrix contemplated the sale by him of his interest in the farm. This view is contradicted, however, by the provision that John and Thomas may hold it "jointly" if they choose. The will was drawn by a layman. This is not only conceded by the parties to the litigation, but is plainly evident from the language of the will itself. It is not probable that either the testatrix or the writer of the will understood the distinction between joint tenancy and tenancy in common. It is far more consistent with the apparent intent of the testatrix to believe that the interest in real estate upon which she sought to charge the payment of these legacies was that of John as a tenant in common, rather than that of John as a joint tenant with Thomas, whose interest in the real estate was subjected to no charge.

Gathering the intent of the testatrix from the whole will, it would appear probable that she intended to use the term "jointly" in the sense of "together." Such is a meaning commonly given to the word. Webster's International Dictionary defines "jointly" as "In a joint manner," "together," "unitedly," "in concert," "not separately." The Standard Dictionary gives practically the same definition, adding "in conjunction." The word "jointly" was evidently intended

to be used, not as a legal term, but in its ordinary meaning, and probably without knowledge that, as applied to real estate, it involved the idea of survivorship. Furthermore, section 66 of the Real Property Law (Consol. Laws, chap. 50; Laws of 1909, chap. 52) provides: "Every estate granted or devised to two or more persons in their own right shall be a tenancy in common, unless expressly declared to be in joint tenancy."

We think it should be held that John and Thomas were seized of the real property in question as tenants in common, and hence that the decree of the surrogate should be reversed, with costs to the appellant.

All concurred.

Decree reversed, with costs to the appellant, and decree directed to the effect that John and Thomas Haddock held the said real estate as tenants in common and not as joint tenants.